UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MC ALLEN DIVISION


JOSE G. PEREZ, ET AL.,       )    CASE NO:  7:13-CV-00261
                       )
           Plaintiffs,   )       CIVIL
                       )
    vs.               )    McAllen, Texas
                       )
LUPE TREVINO, ET AL.,      )  Thursday, September 5, 2013
                       )   (10:13 a.m. to 10:44 a.m.)
              Defendants.   )


INITIAL CONFERENCE

BEFORE THE HONORABLE RANDY CRANE,
UNITED STATES DISTRICT JUDGE


Appearances:            See Next Page

Court Recorder:         Rick Rodriguez

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 18668
                       Corpus Christi, TX 78480-8668
                       (361) 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiffs:                    JAMES PATRICK GRISSOM, ESQ.
                               3008 N. McColl Rd., Ste. B
                               McAllen, TX 78501-6640

                               RICHARD R. ALAMIA, ESQ.
                               113 S. 10th St.
                               Edinburg, TX 78539

Defendants:                    EILEEN M. LEEDS, ESQ.
                               JOSE GARZA, ESQ.
                               Guerra, Leeds, Sabo, et al.
                               1534 E. 6th St., Ste. 200
                               Brownsville, TX 78520

                               PRESTON EDWARD HENRICHSON, ESQ.
                               222 W. Cano
                               Edinburg, TX 78539

1     **McAllen, Texas; Thursday, September 5, 2013; 10:13 a.m.**

2                 **(Call to Order)**

3         **THE COURT:** All right, 13cv261 *Jose Perez, and others*

4 *versus Sheriff Lupe Trevino*. The County, the City of Mission,

5 I think there are a number of defendants here. Let's see --

6 well, those are the only three: Trevino, the City of Mission,

7 County. All right. Announcements, please, who everybody

8 represents?

9         **MR. GRISSOM:** Good morning, your Honor, my name is

10 Jim Grissom on behalf of the plaintiff.

11         **THE COURT:** All right.

12         **MR. ALAMIA:** Richard Alamia on behalf of the

13 interveners.

14         **THE COURT:** The interveners, all right.

15         **MR. HENRICHSON:** Preston Henrichson, your Honor, here

16 on behalf of the sheriff and the County.

17         **THE COURT:** All right.

18         **MS. LEEDS:** Eileen Leeds and Jose Garza on behalf of

19 the City of Mission.

20         **THE COURT:** Okay. Let's start with the interveners'

21 issue. The interveners are both people who claim the same

22 thing, essentially they had their civil rights violated by

23 Jonathan Trevino and --

24         **MR. ALAMIA:** Panama Unit.

25         **THE COURT:** Yeah, members of the Panama Unit.

4

1          **MR. ALAMIA:**  Yes.

2          **THE COURT:**  Although he particularly was involved in

3   each of the incidents you mentioned.

4          **MR. ALAMIA:**  That's correct.

5          **THE COURT:**  The defendants raise two points.  One is

6   that at least on one of these gentlemen who's attempting to

7   intervene, Mr. Rivera, that he actually already filed a lawsuit

8   over at the County Court at Law and that suit was dismissed.

9          **MR. ALAMIA:**  On the basis of sovereign immunity,

10  Judge.

11         **THE COURT:**  Well, see, I couldn't -- somebody sent me

12  the dismissal order.  I think it was you, actually, but it

13  doesn't say anything.  It just says suit is dismissed.  I

14  couldn't tell what it was for, whether it was on the merits or

15  not.

16         **MR. ALAMIA:**  No, it was not.  It was not even --

17         **THE COURT:**  Well, sovereign immunity would be on the

18  merits.

19         **MR. ALAMIA:**  Well, it was not litigated.  The Court

20  ruled that it was dismissed solely based on sovereign immunity.

21         **THE COURT:**  All right.

22         **MR. ALAMIA:**  On the County and the City.  That's what

23  the ruling was.

24         **THE COURT:**  I mean it doesn't say that in the ruling.

25  It just says it's dismissed.  It doesn't say that anywhere in

1  the ruling, so I couldn't tell why the judge dismissed it.  I

2  didn't know if it was because you didn't show up to a court

3  hearing or whatever, you didn't pay a fee or something.  It

4  doesn't really -- it doesn't tell me anything.

5          **MR. ALAMIA:**  But it was dismissed because of the

6  defense of sovereign immunity on behalf of the County and the

7  City.

8          **THE COURT:**  Well, the City I didn't see was actually

9  sued.  I thought only Mr. Trevino was sued -- Jonathan Trevino

10  was sued -- and the County was sued.  That's how I read the

11  pleadings.  Jonathan Trevino in his individual and official

12  capacity, whatever that means, and the County of Hidalgo.  I

13  did not see that the City of Mission had been named in that

14  suit.  They did not.  So, they would not be someone who could

15  raise the res judicata defense as I could see it.  But again, I

16  was given very little information.

17          So, we have that one issue with Mr. Rivera.  The

18  issue we have with both of them, though, that maybe is

19  dispositive and we don't even need to reach the res judicata

20  issue, is statute of limitations.  In a 1983 action there is no

21  federal statute of limitations.  What the rule is is that you

22  look to the State to see what its personal injury statute of

23  limitations is, which in Texas is two years, and Mr. Rivera,

24  his incident was in early 2011 and you didn't attempt to

25  intervene here until July of 2013.  So, more than two years had

1   already lapsed between the event where he claims he was

2   assaulted.

3           **MR. ALAMIA:**  Can I address that?

4           **THE COURT:**  Right.  You sort of -- you gave me some

5   dates, but I didn't really see how that affected him.  And then

6   maybe the same argument, but the other gentleman who also was,

7   whatever, roughed up allegedly, his incident happened in May,

8   although I think you alleged it happened in November.  But it

9   actually -- all the documents that were produced about the

10  arrest and incident, the seizure of the marijuana, were dated

11  late May of 2011, again more than two years prior to your

12  filing suit in this court.

13          So, if you want to address the statute of limitations

14  issue?

15          **MR. ALAMIA:**  Let me address that.  Judge, the

16  original pleadings in state court were solely based on assault,

17  wrongful imprisonment.

18          **THE COURT:**  Uh-huh.

19          **MR. ALAMIA:**  The civil rights issue did not arise

20  until our client became aware through the Panama Unit publicity

21  that happened in a newspaper --

22          **THE COURT:**  Uh-huh.

23          **MR. ALAMIA:**  -- which happened only a few months ago.

24          **THE COURT:**  Uh-huh.

25          **MR. ALAMIA:**  That was when they became aware of the

1    pattern that was being used by the Panama Unit and Mr. Trevino;

2    that's why they filed the civil rights lawsuit.

3              Now, we contend as a result of they becoming aware at

4    that time, within a few months when it happened --

5              **THE COURT:**  Uh-huh.

6              **MR. ALAMIA:**  -- that it meets the statute of

7    limitations.  The statute of limitations hadn't run yet in

8    reference to the civil rights violation.  That's why we

9    intervened.

10             **THE COURT:**  Well, so, I mean, it's a two-year

11   statute.  It runs from the date their cause of action accrued,

12   which I think we would all say that -- even you would probably

13   agree -- that that happened from the date of this event where

14   they were assaulted and then wrongfully arrested and

15   imprisoned.  And so, what you're saying is, well, if they

16   didn't discover that they had a civil rights claim until

17   recently --

18             **MR. ALAMIA:**  That's correct, because --

19             **THE COURT:**  -- and I don't know that that tolls --

20             **MR. ALAMIA:**  Well, Judge, they did not become aware

21   until all the publicity came out.  Now, if you look at the

22   pleadings in state court, there were no pleadings of civil

23   rights violations because they were not aware that there was.

24             **THE COURT:**  Right.  So, what you're saying is they

25   didn't know that really they were the victims of these rogue

1   cops that were trying to steal their marijuana.

2          **MR. ALAMIA:**  That's correct.

3          **THE COURT:**  They didn't learn that until --

4          **MR. ALAMIA:**  Until he was arrested

5          **THE COURT:**  -- until a criminal prosecution --

6          **MR. ALAMIA:**  -- and indicted and the criminal

7   procedure started.

8          **THE COURT:**  And how -- even with due diligence, how

9   could he have ever known that these cops were not there on

10  legitimate law enforcement business but because they were in

11  the business of stealing marijuana --

12         **MR. ALAMIA:**  That's correct.

13         **THE COURT:**  -- and assaulting people.  All right.

14  So, that's an interesting argument.  I just need to do some

15  research whether that's enough, because you can toll when the

16  defendant is doing things to secret or hide the actionable

17  conduct.  So, clearly they were attempting to cover their

18  tracks and make their illegal activities seem legitimate law

19  enforcement --

20         **MR. ALAMIA:**  Judge, even I did not know, as an

21  attorney, that these officers were doing what they were doing

22  until they were indicted.

23         **THE COURT:**  Uh-huh.

24         **MR. ALAMIA:**  And then what do you expect my clients

25  being -- you know, they weren't aware until they were indicted.

1          **THE COURT:**  Right.

2          **MR. ALAMIA:**  So, we're saying that the time that they

3   became aware that the civil rights issue, the statute runs when

4   they became aware of the stealing of the drugs --

5          **THE COURT:**  Right.

6          **MR. ALAMIA:**  -- the process.  See what I'm saying,

7   Judge?

8          **THE COURT:**  Sure, I understand.

9          **MR. ALAMIA:**  So, we're saying the statute of

10  limitations does not apply as a result of that situation.

11         **THE COURT:**  I think I'm probably going to need some

12  more information on this.  But I think both of you know what

13  the issues are.  I mean, is there tolling here because he

14  didn't know -- they didn't know that these police officers,

15  self described as rogue police officers, were actually doing

16  these operations for their own personal financial gain rather

17  than legitimate law enforcement.  That wasn't discovered until

18  a federal law enforcement investigation revealed that and they

19  could not otherwise -- they didn't have otherwise their own

20  resources to figure that out or to determine that?  I don't

21  know.

22         **MR. HENRICHSON:**  Judge, I'd like to respond.  I think

23  the argument is ludicrous because, in the first place both Mr.

24  Course and Mr. Rivera --

25         **THE COURT:**  Uh-huh.

1          **MR. HENRICHSON:**  -- were arrested, were taken to

2  jail, were charged --

3          **THE COURT:**  Right.

4          **MR. HENRICHSON:**  -- pled guilty of crimes.  Their

5  cause of action has nothing to do with whether or not -- they

6  don't even allege in this case that their drugs were stolen and

7  that that's the reason that they're suing.  They're suing

8  because they say they were roughed up or they were slapped or

9  they were mistreated, which they knew at the time.

10          **THE COURT:**  Uh-huh.

11          **MR. HENRICHSON:**  And if they wanted to know whether

12  there was a pattern of that, they could have sued and sought

13  discovery on those issues and made those allegations.  Anyone

14  who is a victim of 1983 --

15          **THE COURT:**  This would be Fourth Amendment sort of

16  excessive force, anyway.

17          **MR. HENRICHSON:**  Yes.

18          **MS. LEEDS:**  Or false arrest.

19          **THE COURT:**  So, you would know -- you know got beat

20  up.

21          **MR. HENRICHSON:**  Exactly.

22          **THE COURT:**  It's not really -- well, false arrest?

23  Yeah, you would probably know that, as well.  Did they -- I was

24  curious when I saw that they only reported that they had seized

25  90 pounds of marijuana, I wondered whether there was -- was

1   there a lot more there and these agents kept some?  I mean,

2   your clients allege that on the -- that's on the --

3          **MR. HENRICHSON:**  They've not made such allegations,

4   your Honor.

5          **THE COURT:**  All right.  So, they're not claiming some

6   kind of theft or taking of their property.

7          **MR. HENRICHSON:**  And, in fact, just because there's

8   some evidence and some now public knowledge that some of the

9   time these officers were doing rogue things, it doesn't mean

10   that every time they arrested someone and took them to jail and

11   they pled guilty that they were -- that that was something

12   illegal.  In other words, these officers --

13          **THE COURT:**  Did do some legitimate law enforcement

14   things.

15          **MR. HENRICHSON:**  They were legitimate law enforcement

16   officers who legitimately enforced the law most of the time.

17   The fact that they went rogue on occasion and was embarrassing

18   to --

19          **THE COURT:**  You say most of the time.  I think people

20   might debate you on that.

21      **(Laughter)**

22          **MR. HENRICHSON:**  Well, I think that the numbers will

23   bear me out.  But Judge, it's a matter of public perception --

24          **THE COURT:**  Yeah.

25          **MR. HENRICHSON:**  -- based upon what's been in this

12

1    court.

2        **THE COURT:**  You'd have to see the numbers.

3        **MR. HENRICHSON:**  But at the same time, these cases in

4    this court at this time are cases, are legitimate cases where

5    the defendants actually pled guilty --

6        **THE COURT:**  Uh-huh.

7        **MR. HENRICHSON:**  -- and the only time -- they were

8    just opportunistically seeking to --

9        **THE COURT:**  Well, no doubt.

10       **MR. HENRICHSON:**  -- to coattail the criminal case.

11       **THE COURT:**  Right.  But the question is do they have

12   the legal right to do so and the primary issue here would be

13   statute of limitations bar.  And to the excessive force claims,

14   there's no real tolling that would be available.  They knew

15   that they had been abused, beaten up, had excessive force used

16   against them at the time it occurred.  It wouldn't matter

17   whether the officers were there legitimately or not

18   legitimately.  They know that they've been assaulted.

19       Now, if they had had property seized or taken from

20   them that they thought had been taken for legitimate law

21   enforcement reasons and it turned out that it had just been

22   stolen and resold, maybe that was something they might not know

23   about at the time.  But here all you're claiming is excessive

24   force on both of them; I mean, that they were both roughed up.

25   There isn't any claim that they had their marijuana stolen from

1    them.  Right?  I mean, they're just both --

2             **MR. ALAMIA:**  Well, your Honor --

3             **MR. HENRICHSON:**  I don't think they could --

4             **THE COURT:**  And really none of them were really

5    roughed up that day.  One of them was --

6             **MR. ALAMIA:**  Well, the thing is that --

7             **THE COURT:**  Well, we also had a Fourth Amendment

8    claim he came into the hotel room without consent and violated

9    his Fourth Amendment right to search and seizure and -- but

10   again, he would know that that happened at the moment it

11   happened whether or not these were corrupt or non-corrupt law

12   enforcement officers.

13            **MR. HENRICHSON:**  And Judge, they can't sue -- I mean,

14   I've never heard of a cause of action for suing to recover for

15   the theft of marijuana.

16            **THE COURT:**  Well, most people don't sue for that, but

17   I don't know that you can't.

18            **MR. ALAMIA:**  Judge, if I may --

19            **THE COURT:**  I don't know if you can.

20            **MR. HENRICHSON:**  It may be a public policy, Judge,

21   against that it's a cause of action.

22            **MR. ALAMIA:**  Judge --

23            **THE COURT:**  You're right.  I mean, it may be but, I

24   mean, maybe it was on its way to Colorado where it's legal.

25            **MR. ALAMIA:**  If I may -- Judge, under the State

14

```
 1   Constitution and under the Federal Constitution --

 2           THE COURT:  Uh-huh -- right.

 3           MR. ALAMIA:  -- the taking of liberty and freedom --

 4           THE COURT:  Right.

 5           MR. ALAMIA:  -- is a constitutional violation.

 6           THE COURT:  Uh-huh.

 7           MR. ALAMIA:  Okay?  And we're saying --

 8           THE COURT:  You get two years to make -- to file suit

 9   on it.

10           MR. ALAMIA:  Well, no, not necessarily, Judge,

11   because --

12           THE COURT:  Not necessarily; you're right.

13           MR. ALAMIA:  -- they did not become aware that these

14   constitutional issues or constitution violations had occurred

15   until they indicted these people --

16           THE COURT:  But don't they know at --

17           MR. ALAMIA:  -- and the procedure that they used in

18   the process of arresting these people was illegal.

19           THE COURT:  But don't they know at the time that,

20   "I've been assaulted and I was just sitting here minding my own

21   business.  I didn't need to be kicked in the gut or slapped in

22   the face.  I know that now.  The moment it happened -- I know

23   the moment it happened that I didn't give this officer consent

24   to come into my hotel room and he just kicked the door down and

25   came in, anyway, and then he beat me --
```

1          **MR. ALAMIA:**  Another thing, Judge --

2          **THE COURT:**  -- until I told him that the marijuana

3    was in the next room."

4          **MR. ALAMIA:**  Another thing is that the District

5    Attorney of Hidalgo County --

6          **THE COURT:**  Uh-huh.

7          **MR. ALAMIA:**  -- had indicated that any cases that

8    were convicted or pending in reference to the Panama Unit that

9    he's contemplating dismissing or expunging the record if they

10   already pled.

11         **THE COURT:**  Uh-huh.

12         **MR. ALAMIA:**  Which, here again, goes back to the

13   constitutional issue that these people, our clients, were not

14   aware until these people were indicted that they were using

15   these type of tactics in the process of arresting them.

16         **THE COURT:**  But your client would know that they used

17   a tactic that was -- that either was excessive force or

18   violated their Fourth Amendment right when they kicked in the

19   door without, you know, did the search without consent.  They

20   would know that at the time.

21         Now, the reason -- I mean, there may be some

22   constitutional infirmity to the criminal convictions if they

23   were done in violation of some constitutional right and that,

24   perhaps, is why the District Attorney is considering expunging

25   those or dismissing those because he may now know that there

16

1    was some constitutional violations and so those are

2    constitutionally infirm.

3            But your client still has two years within which to

4    file suits on that and unless there was some claim they didn't

5    know they had, there's some tolling aspect of that, and

6    incarceration isn't one of them; although in some states

7    incarceration tolls limitation but not in Texas.

8            **MR. ALAMIA:**  Will you give me an opportunity to brief

9    it before you make a ruling in detriment to my client if the

10   Court's leaning that way?

11           **THE COURT:**  Well, it seems sort of the obvious

12   decision here, and so if you want a final opportunity to brief

13   that and maybe mount an argument about tolling or why your

14   client wouldn't have known at the time of the arrests and

15   beatings that they didn't have these constitutional claims,

16   then I'll give you time to do that.

17           **MR. ALAMIA:**  All right.

18           **THE COURT:**  How much time do you think you need to do

19   that?

20           **MR. ALAMIA:**  Give me at least 30 days?

21           **THE COURT:**  All right.  I'll give you 30 days, then.

22   We'll give you a month.

23           So, I'm not going to rule on your motion to intervene

24   yet until we resolve that, because if I resolve that against

25   you then I would just be denying your motion to intervene.

1   It's not that I would be ruling on a constitutional or

2   limitations claim.  I wouldn't get to that point.  That's sort

3   of a merits -- I would just say I'm not going to let you come

4   into this lawsuit because I know your case is already time

5   barred.

6           **MR. ALAMIA:**  Can you give me 60 days?

7           **THE COURT:**  You're going to really dig hard?

8           **MR. HENRICHSON:**  Judge, he's had two months already.

9           **THE COURT:**  I mean, it doesn't really matter, because

10  I'm not letting you in if you want to just stand outside the

11  courtroom door basically with your client's claim waiting to

12  come in --

13          **MR. ALAMIA:**  Well, give me at least 45 days.

14          **THE COURT:**  I can give you six weeks to do that.

15          **MR. ALAMIA:**  All right.

16          **THE COURT:**  So, you won't be participating in the

17  case for six weeks.  And there's other parts of the case that I

18  need to get moving along.  So, you'll have six weeks then to

19  brief --

20          **MR. ALAMIA:**  What's the deadline?  Can you give me a

21  deadline, Judge?

22          **THE COURT:**  -- that issue.  I'll give you a written

23  order with a date.

24          **MR. ALAMIA:**  Oh, okay.

25          **THE COURT:**  I don't have a date here.  But you'll get

1    a written order to that with a date.  All right.  So, that's

2    your two clients.

3           So, now let's move on to the other plaintiffs -- I'm

4    going to say there's sort of two sets of them -- that are

5    already in the case and there is a couple of requests.  Let's

6    see.  The easiest one is there's a request to sever them out,

7    the Shumakers and the Perez's, saying these were two

8    independent incidents.  But my concern is that if I sever them

9    out, then you might have some inconsistent jury findings.  We

10   may find, for example, that there was no customer policy in one

11   case and that in another case we might find that there was,

12   that the fact that these agents -- these rogue officers -- had

13   been doing these things for such a long time that it was known

14   to the policy makers, the sheriff being a policy maker.  They

15   might find yes, and make a positive finding in that regard.

16          And so, I can't -- I'm worried about two inconsistent

17   findings by a jury over the same conduct.  And to me,

18   therefore, the case should be kept together.  Any other people

19   with these similar claims, they all arise out of whether or not

20   the Panama Unit and what it was doing illegally was something

21   that was known to and acquiesced by the sheriff, the policy

22   maker, or the City of Mission police chief.

23          And then, of course, there's this whole argument that

24   I think the sheriff says, "No, I wasn't in control of them,"

25   and the City says, "Yes, you were.  We have a written document

1   to that effect."  So, you have the City saying it's the

2   sheriff's -- these are the sheriff's rogue agents and the

3   sheriff saying, "No, these are the City's rogue agents."  So,

4   we're going to have a little internal fight between the

5   defendants, one saying, "No, it's the County's problem," and

6   the County saying, "No, it's the City's problem."

7            And I just -- I can't have inconsistent jury

8   findings.  It would make no sense.  So, I'm going to keep the

9   case together for the time being.  Maybe after discovery it's

10  something I may reconsider on a trial.  But it seems to me

11  there are really good policy reasons for why the case should

12  remain together, even though they are separate incidents.  They

13  do have this common question of law and common facts pertaining

14  to that question of law that I think merit them staying

15  together.  All right.  So, that's the severance issue.

16           There was also -- do you have a motion to dismiss?  I

17  can't remember.

18           **MR. HENRICHSON:**  Yes, your Honor.

19           **MS. LEEDS:**  Yes, both of us.

20           **THE COURT:**  Both of you have motions to dismiss.

21           **MR. HENRICHSON:**  Both of us do.  But she has -- I

22  think Mission has a 12(b)(6) and I have a 12(b)(1), but they're

23  basically the same issues, I think.

24           **THE COURT:**  All right.  I probably just need to look

25  at those a little closer.  I mean, the Court has the benefit of

1    a lot of sworn testimony before it that may not be in this

2    record, but is in this record.

3         **(Laughter)**

4              And so, it is not likely that this case is going to

5    be dismissed.  I mean, it's not.  I know too much.  I know

6    there's sufficient evidence.  Again, there only needs to be

7    some evidence.  It's a very slight burden -- some evidence to

8    show that this was a policy or practice and the Court is aware

9    already of substantial testimony in the record that this was a

10   policy condoned by policy makers.  But I need to just look

11   specifically at what you're asking -- maybe the Court can

12   narrow some of these issues.

13            **MR. HENRICHSON:**  For example, Judge, we've said that

14   the sheriff individually should be dismissed, that he's here as

15   --

16            **THE COURT:**  Right.  There's no evidence of him

17   personally --

18            **MR. HENRICHSON:**  No, he's here as a representative of

19   the County and they have an election.  They've sued them both.

20   That means they have to -- the sheriff has to be dismissed

21   under their claims and that's a part of our motion to dismiss.

22            **THE COURT:**  Because he is a policy maker -- I mean,

23   nobody's alleging that he personally participated in any of the

24   two incidents involving either the Shumakers or the Perez's,

25   right?

1          **MR. GRISSOM:**  Not yet, but I don't have discovery on

2    those issues, your Honor.  That's why we have the pretrial

3    scheduling order.  What became apparent to me in these motions

4    to dismiss is that there's information being acted upon by

5    their attorneys that I'm not aware of.

6          **THE COURT:**  Well, some of the -- the lawyer -- Mr.

7    Henrichson requested transcripts of the criminal trial.  Has

8    that --

9          **MR. HENRICHSON:**  That's correct.

10         **THE COURT:**  Has that been produced to you?

11         **MR. HENRICHSON:**  I haven't even received them yet,

12   Judge.

13         **MR. GRISSOM:**  I've received a copy, but I don't have

14   the transcripts.  I could share that with you.

15         **THE COURT:**  You received a copy of --

16         **MR. GRISSOM:**  Well, no, I didn't get the entire

17   criminal trial, just got some of the testimony.

18         **THE COURT:**  You got a transcript or just an audio

19   recording?

20         **MR. GRISSOM:**  Just an audio.

21         **THE COURT:**  Okay.  So, somebody burned a CD for you,

22   which we do when anybody asks.  Okay.  But that would need to

23   be transcribed in a form for the Court to consider as part of

24   this record.  Unless you all want to just stipulate that

25   whatever discovery or testimony was in the other case will be

1    part of this record.  It's something you all might think about

2    so that you don't duplicate the questioning of witnesses.

3          **MR. HENRICHSON:**  Since the issues are so different,

4    Judge, I just don't think there's any way that I can do that.

5    I think there's also the issue of prejudice.  It's bad enough

6    to have all this publicity, but, you know, further, I wasn't

7    here.  We didn't participate.

8          **THE COURT:**  Sure.  Let me --

9          **MR. HENRICHSON:**  I'm just getting ready to get some

10   of the testimony from the record.

11         **THE COURT:**  Now, some of the -- there are no --

12   you've only individually sued the sheriff, but you don't allege

13   that he individually did any of these things.

14         **MR. GRISSOM:**  Correct.

15         **THE COURT:**  Are you not concerned, Mr. Grissom, that

16   you need to name individual persons who you contend violated

17   your client's civil rights in case the jury were to find that

18   this wasn't part of some policy of the County or the City?

19         **MR. GRISSOM:**  I didn't do that in my pleadings, your

20   Honor, because I didn't have sufficient information to do that.

21         **THE COURT:**  Well, but you know who the ones are that

22   came in and, whatever, stole jewelry from the Perez's.  I mean,

23   you know exactly who the persons are, certainly now, especially

24   if you've requested some of the transcript.  That was discussed

25   by numerous witnesses in the trial.

1          **MR. GRISSOM:**  I haven't had the opportunity to do all

2    that.  And I also need discovery from the defendants before I

3    can determine which individuals may be responsible.  You know,

4    I have insinuations.  I have people who have told me about

5    specific things, but I don't have any proof.  I don't have any

6    deposition testimony --

7          **THE COURT:**  Well, but you know --

8          **MR. GRISSOM:**  -- that would lead me to that, to do

9    that, make that step.

10         **THE COURT:**  -- you know who was there.  I mean, you

11   know which agents went in.  You know there was a --

12         **MR. GRISSOM:**  Well, we know which agents were there,

13   but we don't know what happened after that or around that and I

14   have -- again, I have insinuations about the surrounding

15   activity and what went on, but until I get further discovery I

16   won't know the --

17         **THE COURT:**  Well, I suggest that you listen to the

18   transcript, because there was lots of explanation of exactly

19   what happened and exactly what happened afterwards.  Some of

20   the people involved in it, I believe the person who actually

21   was the one who stole the jewelry testified in the trial, if I

22   recall.  I'm not exactly sure.

23         So, you have that.  And then you had the sheriff

24   talking about what he did afterwards regarding investigating

25   that or not investigating it, as people might debate.  All

1   right.  So, again, at some point then just planning ahead you

2   may add some additional individual defendants.

3           All right.  Well, let me look at both of your motions

4   to dismiss in more detail and perhaps the Court can narrow down

5   some of the issues and it also sounds like, Mr. Grissom, that

6   you feel like you need some more time to marshal some evidence

7   on those.  So, I may allow you to do that or I may simply rule

8   knowing the evidence that is out there that I know that you'll

9   eventually marshal in deciding these issues.

10          All right.  So, that being said, I need to issue a

11   scheduling order so that we can get moving on this case and you

12   all asked for a fair amount of time.  I'm sorry.  So, I have

13   not prepared a scheduling order because I'm not sure how much

14   time you all need.  Do we think trial next summer -- it could

15   be all put together by then?

16          I mean, one of the other problems is that all of you

17   may want to take the depositions of some of these actors who

18   are probably going to be in federal prison halfway across the

19   country in a couple of months.  So, you know, if you all want

20   to do that before they leave town, you may want to do that.  Of

21   course, it may still -- a lot of them still have Fifth

22   Amendment rights.

23          **MR. HENRICHSON:**  That's exactly one of the problems.

24          **MR. GRISSOM:**  That's part of my plan, too, your

25   Honor.

1      **THE COURT:**  But I think many would waive their

2  rights, as they've already done, but I think some would not.

3      **MR. GRISSOM:**  Yes, that's another problem.

4      **THE COURT:**  But I don't know.  I mean, they've all --

5  all the ones involved in this lawsuit already pled guilty, but

6  they have not been sentenced, so they still have Fifth

7  Amendment rights.

8      **MR. HENRICHSON:**  What are we looking for -- what

9  timing are we looking at in terms of sentencing, Judge?

10      **THE COURT:**  They are scheduled the middle of October

11  to be sentenced.  And I expect most of them will be sentenced

12  then.  I expect maybe a few are still doing things where

13  they're not ready to be sentenced.  But I think most of them --

14  I think the ones involved in this would be ready by -- are

15  going to be ready for sentencing.

16      **MR. HENRICHSON:**  Then, also, Judge, if we wait until

17  then it will also provide you time to make the ruling on the

18  other --

19      **THE COURT:**  Yes --

20      **MR. HENRICHSON:**  -- the other defendants or

21  interveners.

22      **THE COURT:**  Right.  But also, Mr. Grissom, if you're

23  going to add people, you've got to do it quick.

24      **MR. HENRICHSON:**  Judge, I'm thinking next September

25  we ought to start with a scheduling order like that and then

1    see how it goes this year and see where we are and we can all

2    then decide if we want to ask the Court for more time or not.

3              **THE COURT:**  Does that seem reasonable, Mr. Grissom?

4         **MR. GRISSOM:**  Yes.  We have a lot of things to look

5    at.

6              **THE COURT:**  All right.  And if you do come in, I

7    assume you could be ready by then, as well.  All right.  So,

8    then I'll give you a trial date of next September.  Okay.  I'll

9    issue a scheduling order later this morning to that effect and

10   it'll -- you'll have a discovery cut-off about a month before

11   that.  And I don't know that there's going to be any expert

12   testimony required, but you'll have some expert deadlines, as

13   well.

14             All right.  So, I'll try get out an order pretty

15   quick on the motions to dismiss, Mr. Grissom, and, again, I'll

16   just implore you if you're going to add parties, you better do

17   it quick or you're going to have a tough time adding them --

18   getting them served later.  So, I would suggest that you look

19   at that issue and decide yes or no whether you want to add

20   anybody.

21             All right.  And then, I'll also give you an order

22   giving you about six weeks to see if you can convince the Court

23   about some tolling issue, which I think is probably the only

24   thing you can rely on at this point to save these claims from

25   the Court denying your request to intervene.

1          **MR. HENRICHSON:**  Your Honor, I will also provide the

2  Court with some additional information on the res judicata

3  issue.

4          **THE COURT:**  Yes, if you need to.  I don't know that

5  you really need to, unless -- because I think the statute of

6  limitations is going to be dispositive.  I don't really want to

7  have to figure what did the judge mean when he said, "I grant

8  the motion to dismiss" --

9          **MR. HENRICHSON:**  That's fine, Judge.

10          **THE COURT:**  I mean, I guess I could look at your

11  motion --

12          **MR. HENRICHSON:**  That's all I was thinking about.

13          **THE COURT:**  I don't know if your motion had ten

14  different things in it or only one.  If it had only one, I

15  could figure out which one the judge rested his decision on,

16  but if it had ten different reasons, I'd be guessing.  But I

17  think, really, limitations is going to be dispositive.  That's

18  what I'm thinking.

19          Yes, Ms. Leeds?

20          **MS. LEEDS:**  Yeah, your Honor, just to clarify the

21  City issue on the prior lawsuit, the City was in the body, not

22  in the style.  The City was not mentioned in the style of the

23  lawsuit.

24          **THE COURT:**  Had the City ever been served?

25          **MS. LEEDS:**  Yes.

28

1          **THE COURT:**  Did the City file an answer?

2          **MS. LEEDS:**  The City answered, yes.

3          **THE COURT:**  Hm.  All right, because I didn't -- I

4  don't have all those pleadings.  All right.

5          **MS. LEEDS:**  I didn't, either.

6          **THE COURT:**  So, all I could see was in the style of

7  the case and the motion to dismiss, for example, there was just

8  an individual, Mr. Trevino, and the County.

9          But again, I think the limitations issue is going to

10  be the real issue and if somehow we get past that, I'll bring

11  you back in and we can talk about then this --

12          **MR. HENRICHSON:**  The other issues?

13          **THE COURT:**  -- the other issue.  All right.  Thank

14  you all very much.  I'll get a scheduling order out later

15  today.  You're excused at this time.

16     **(Proceeding was adjourned at 10:44 a.m.)**

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.

_____          January 31, 2014_

                TONI HUDSON, TRANSCRIBER